Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T: (415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff,*
*Thomas Dean Millsap, III*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

THOMAS DEAN MILLSAP, III,

Plaintiff,

vs.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No.: 8:26-cv-2037

**COMPLAINT WITH JURY DEMAND**

Plaintiff, by and through undersigned counsel, alleges, based upon Plaintiff's personal knowledge, information and belief, and the investigation of counsel, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA").

## PARTIES

2. Thomas Dean Millsap, III ("Plaintiff") resides in Beaverton, Oregon and

qualifies as a "consumer" under the FCRA.

3. Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant") is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. The information Experian collects, maintains and sells include confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

4. Experian collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Experian collects and maintains information about them. Not only that, but consumers cannot remove information that Experian collects and maintains about them from Experian's databases. Further, Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Experian sold.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §

1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Experian resides in this District by maintaining its principal place of business in Costa Mesa, California.

## FACTUAL ALLEGATIONS

7. On or about March 12, 2026, Plaintiff accessed and reviewed his Experian consumer report online.

8. Upon reviewing his Experian consumer report, Plaintiff noticed an account that he did not recognize, specifically, an AFFIRM INC ("Affirm") account with the following details:

a. AFFIRM INC
   Account No.: 3F96JPXX
   Date Opened: December 19, 2022
   Status: Closed
   Original Balance: $372

9. The account reported by Experian does not belong to Plaintiff. Plaintiff did not apply for, open, authorize, or benefit from this account.

10. Plaintiff does not know if the appearance of this account on his Experian consumer report is the result of a mixed file, or identity theft. As Plaintiff began to suspect that he may have been the victim of identity theft, he acted promptly to document, report, and dispute the fraudulent activity.

11. On or about March 12, 2026, Plaintiff filed an Identity Theft Report with the Federal Trade Commission ("FTC" - Report No. 198807334), listing the

fraudulent account and affirming under penalty of perjury that he had not opened or authorized the AFFIRM INC account.

**Plaintiff's Dispute with the Experian**

12. On or about March 17, 2026, Plaintiff submitted a written dispute to Experian. In his dispute, Plaintiff provided proof of his identity, a copy of his FTC Identity Theft Report (FTC Report No. 198807334), identification of the fraudulent account, and statements that he does not recognize and did not open the disputed account, and that "I did not authorize this account and did not receive or benefit from any goods, services, or funds associated with it." Plaintiff also requested that the fraudulent account be removed from his consumer report following their investigation.

**Experian's Unreasonable Dispute Reinvestigation**

13. Upon information and belief, Experian received Plaintiff's dispute on or about March 24, 2026.

14. Receipt of Plaintiff's dispute letter and the accompanying documentation triggered Experian's statutory obligation to block the reporting of the identity theft information within four business days pursuant to 15 U.S.C. § 1681c-2, as well as its statutory obligation to conduct a reasonable reinvestigation and correct or delete any inaccurate information pursuant to 15 U.S.C. § 1681i.

15. On or about April 17, 2026, Experian issued its dispute results to Plaintiff. Plaintiff's dispute resulted in Experian verifying the disputed information

as accurate, and no change was made to the disputed information on Plaintiff's consumer report.

16. On May 7, 2026, Plaintiff obtained and reviewed his updated Experian consumer report. To his frustration and detriment, the same Affirm account which he had disputed and identified as the product of identity theft was still being reported by Experian.

17. Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

18. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Experian's Method for Considering Consumer Credit Report Disputes**

19. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

20. The credit bureaus, Equifax, Experian, TransUnion, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha

language specific to the credit reporting industry.

21. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or “Metro 2.”

22. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

23. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

24. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

25. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

26. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

27. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

28. The data furnishers then have an obligation under the FCRA to conduct

a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

29. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Experian's Willfulness**

30. Plaintiff acted promptly upon realizing that he may have fallen victim to identity theft.

31. Plaintiff filed an FTC Identity Theft Affidavit, and then subsequently disputed the fraudulent account with Experian in March 2026.

32. In his dispute, Plaintiff provided proof of his identity as well as a copy of his FTC Identify Theft Affidavit. Plaintiff also identified the information that resulted from identity theft and provided a statement that the information is not information relating to any transaction by the consumer. Lastly, Plaintiff requested that Experian investigate and remove the fraudulent account.

33. Despite Plaintiff's diligence in reporting and disputing the inaccurate consumer information that was the product of identity theft, Experian failed to block

or remove the fraudulent Affirm account from his file.

34. On or about April 25, 2026, Plaintiff applied for a Capital One credit card. Plaintiff's application was approved, albeit for a very low credit limit of $300.

35. Plaintiff reasonably believes that Experian provided inaccurate consumer report information concerning Plaintiff to Capital One.

36. Plaintiff reasonably believes that Capital One relied upon the inaccurate information provided by Experian—specifically, the Affirm account—in extending Plaintiff a credit line with a lower credit limit than Plaintiff otherwise would have received.

37. Experian's conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and despondency after Experian failed to properly reinvestigate his dispute and block the information resulting from identity theft, as required by the FCRA.

38. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report that it sold to Capital One.

39. At all times pertinent hereto, Experian was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

40. At all times pertinent hereto, Experian's conduct, and the conduct of its

representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and Plaintiff's rights.

41. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages, including the loss of credit opportunities; harm to his credit rating; diminished overall creditworthiness; the expenditure of time and money disputing and attempting to remove the derogatory account that was the product of identity theft; and emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, humiliation, worry, fear, stress, anxiety, frustration, shock, and embarrassment arising from the invasion of his privacy, as well as from being a victim of identity theft whose veracity was doubted and questioned by Experian.

**COUNT I**
**15 U.S.C. § 1681e(b)**

42. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

43. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports. *See* 15 U.S.C. § 1681e(b).

44. On at least one occasion in 2026, after Plaintiff disputed the inaccurate consumer information with Experian, Experian prepared and sold an inaccurate consumer report concerning Plaintiff to one or more third parties, thereby

misrepresenting Plaintiff and Plaintiff's creditworthiness.

45. Despite having knowledge that Plaintiff may have been the victim of identity theft, including through its receipt of Plaintiff's dispute and FTC Identity Theft Report, Experian sold consumer reports concerning Plaintiff to one or more third parties that contained the inaccurate and fraudulent Affirm tradeline. In doing so, Experian misrepresented Plaintiff's identity and creditworthiness by reporting that the fraudulent Affirm account had been charged off due to nonpayment, even though Plaintiff never authorized, opened, or benefitted from the account.

46. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it published and maintained concerning Plaintiff.

47. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages, including the loss of credit opportunities; harm to his credit rating; diminished overall creditworthiness; the expenditure of time and money disputing and attempting to remove the derogatory account that was the product of identity theft; and emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, humiliation, worry, fear, stress, anxiety, frustration, shock, and embarrassment arising from the invasion of his privacy, as well as from being a victim of identity theft whose veracity was doubted and questioned by Experian.

48. Experian's conduct, actions, and inactions were willful, or at least

negligent, rendering them liable for actual damages, statutory damages, punitive damages and attorneys' fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**15 U.S.C. § 1681i**

50. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

51. The FCRA mandates that a consumer reporting agency conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

52. The FCRA provides that if a consumer reporting agency conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

53. On at least one occasion during 2026, Plaintiff disputed the inaccurate information with Experian and requested that Experian correct and/or delete the fraudulent Affirm account that was the product of identity theft.

54. In response to Plaintiff's dispute, Experian failed to conduct a

reinvestigation, or such investigation was so shoddy as to allow inaccurate and damaging information to remain in Plaintiff's file.

55. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's file.

56. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages, including the loss of credit opportunities; harm to his credit rating; diminished overall creditworthiness; the expenditure of time and money disputing and attempting to remove the derogatory account that was the product of identity theft; and emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, humiliation, worry, fear, stress, anxiety, frustration, shock, and embarrassment arising from the invasion of his privacy, as well as from being a victim of identity theft whose veracity was doubted and questioned by Experian.

57. Experian's conduct, actions, and inactions were willful, or at least negligent, rendering them liable for actual damages, statutory damages, punitive damages and attorneys' fees and costs in an amount to be determined by the Court

under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**15 U.S.C. § 1681c-2**

58. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

59. Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the information in Plaintiff's file that Plaintiff identified as resulting from identity theft.

60. Experian was required to block the reporting of the identity theft information within four business days of receiving Plaintiff's dispute and the information required by 15 U.S.C. § 1681c-2(a), but failed to do so.

61. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages, including the loss of credit opportunities; harm to his credit rating; diminished overall creditworthiness; the expenditure of time and money disputing and attempting to remove the derogatory account that was the product of identity theft; and emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, humiliation, worry, fear, stress, anxiety, frustration, shock, and embarrassment arising from the invasion of his privacy, as well as from being a victim of identity theft whose veracity was doubted and questioned by Experian.

62. Experian's conduct, actions, and inactions were willful, or at least

negligent, rendering them liable for actual damages, statutory damages, punitive damages and attorneys' fees and costs in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: July 29, 2026

*/s/ Andrew J. Gramajo*
Andrew J. Gramajo, CA # 338144
AJG LAW GROUP, PC.
320 16th St,
Hermosa Beach, CA 90254
T:(415) 638-9140
E: Andrew@Ajglawgroup.us

*Attorneys for Plaintiff*
*Thomas Dean Millsap, III*